## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ELIZABETH LOPEZ,

       Plaintiff,

         v.               No. 23-cv-10040-DLC

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

## MEMORANDUM AND ORDER

CABELL, U.S.M.J.

## I.   INTRODUCTION

Plaintiff Elizabeth Lopez ("plaintiff" or "Lopez") moves to vacate a decision by the Acting Commissioner of the Social Security Administration ("defendant" or "Commissioner") denying her claim for Supplemental Security Income (SSI) benefits.[1]  (D. 14).  She contends that the Administrative Law Judge (ALJ) who adjudicated her claim failed to consider her testimony about the frequency and extent of her migraines in determining that she retained the residual functional capacity (RFC) to perform certain work and was not disabled, and thus made a decision that was not supported by

---

[1] Although the motion's caption indicates that it seeks reversal of the Commissioner's decision, the memorandum in support of the motion clarifies that the motion really seeks vacation of the decision and remand for a *de novo* hearing.  (D. 15, p. 12).

substantial evidence in the record.  The Commissioner disagrees and moves to affirm its decision.  (D. 20).  While it is clear that the ALJ considered the written evidence in the record regarding the plaintiff's migraine headaches, it is not clear whether he also considered her testimony regarding the same, and, if so, what weight he assigned it.  Because the plaintiff's testimony, if fully credited, could be material to the determination of the plaintiff's RFC and even the outcome of her disability claim, a remand is appropriate to obtain clarity on this point.  The court thus vacates the Commissioner's decision and remands the matter for further proceedings.  The Commissioner's motion is denied.

## II.  <u>PROCEDURAL BACKGROUND</u>

The plaintiff applied for SSI benefits on March 10, 2020. (Administrative Record [A.R.] 11).  That initial claim was denied on April 24, 2020.  (*Id.*).  The plaintiff sought reconsideration of the denial and the claim was again denied upon reconsideration on January 14, 2021. (*Id.* at 11).  On March 17, 2021, the plaintiff filed a written request for a hearing, which was held on November 23, 2021.  (*Id.*).  On December 14, 2021, the ALJ again denied the plaintiff's claim.  (*Id.* at 22).  On February 15, 2022, the plaintiff requested the Appeals Council to review the ALJ's decision.  (*Id.* at 2).  On November 9, 2022, the Appeals Council denied the request for review on November 9, 2022, (*id.* at 1, 6),

making the ALJ's decision the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 106 (2000).  The plaintiff timely filed her appeal on January 6, 2023.  (D. 1).

### III. STATUTORY AND REGULATORY FRAMEWORK

To obtain disability benefits, a claimant must prove that she is disabled, meaning that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a) ("To meet this definition, you must have a severe impairment(s) that makes you unable to do your past relevant work . . . or any other substantial gainful work that exists in the national economy.").

Claims for disability benefits are evaluated by an ALJ following a mandated five-step procedure.[2]  20 C.F.R. § 404.1520. At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), meaning "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit," 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, then

---

[2] The ALJ may end the inquiry at an earlier step if she can definitively determine that the claimant is or is not disabled at that step.  20 C.F.R. § 404.1520(a)(4).

she is not disabled.  20 C.F.R. § 404.1520(a)(4)(i); *see* 42 U.S.C. § 1381a (individual must be aged, blind, or disabled to be eligible for benefits including SSI).  If the claimant is not engaged in such activity, the ALJ moves to step two.

At step two, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment is "severe" if it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1522(a).  If the claimant does not have at least one severe medically determinable impairment or a combination of impairments that are collectively severe, or if her severe impairments are not expected to result in death or last for a continuous period of at least 12 months, then she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *see* 20 C.F.R. § 404.1509 (setting out duration requirement).  If, though, the claimant does have one or more severe impairments, the ALJ moves to step three.

At step three, the ALJ determines whether one or more of the claimant's impairments "meets or equals one of our listings in [20 C.F.R. Pt. 404, Subpt. P, App'x 1] and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(iii).  If an impairment matches or is functionally equivalent to a listed condition and satisfies the duration requirement described in step two, then the claimant is disabled.  *Id.*  If not, the ALJ moves to step four.

Step four considers the claimant's residual functional capacity (RFC) to work. This step entails a two-part inquiry. The ALJ first determines the claimant's RFC to work at all, that is, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). If she cannot, the claimant is disabled. If she is able to do some work, the ALJ then determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. § 416.920(f). If the claimant has the RFC to do her past relevant work, she is not disabled. Id. However, if the claimant is not able to do any past relevant work, the analysis proceeds to the fifth and last step, which entails asking whether, given the claimant's RFC, age, education, and work experience, she can perform other specific jobs that exist in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). If the claimant can perform another such job, then she is not disabled; otherwise, she is disabled. 20 C.F.R. § 404.1520(a)(4)(v).[3]

---

[3] At the first four steps of the process, the claimant bears both the burden of production and the burden of proof. *Sacilowski v. Saul*, 959 F.3d 431, 434 (1st Cir. 2020) (citing *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001)). At step five, the burden shifts to the Commissioner to "come forward with evidence of jobs in the national economy that the claimant is able to perform." *Id.*

IV.  <u>**RELEVANT BACKGROUND**</u>

As the plaintiff's appeal relates to the sufficiency of the ALJ's consideration of the evidence relating to her migraines, the court focuses principally on that evidence here.

### A.  Lopez's Background and Application for SSI

The plaintiff initially alleged that she had been disabled since December 31, 2008,[4] (A.R. 416), but later amended her disability onset date to March 10, 2020.  (*Id.* at 199).  At the time the ALJ denied her application, the plaintiff was 47 years old.  (*Id.* at 22, 414).  The plaintiff attended school through 10th grade and received a daycare teacher certification in 2008.  (*Id.* at 436).  She last worked in 2008.  (*Id.* at 437).  She has previously been employed as a cashier and a daycare teacher in addition to working in an unspecified position in "Food Prep."  (*Id.*).

### B.  The Plaintiff's Medical History

The plaintiff has experienced headaches on an ongoing basis since she was six years old.  (*Id.* at 1370).  She began seeing Dr. Arun Rajan for migraine treatment on August 27, 2018.[5]  (*Id.*).  During that initial visit, the plaintiff reported that she experienced eight migraines a month at an average severity of 8/10.

---

[4] The plaintiff had previously applied for SSI in 2014.  That application was denied.  (A.R. 249).

[5] The plaintiff had a preexisting doctor-patient relationship with Dr. Rajan, who treated her for left leg pain in 2012 and 2013.  (A.R. 3173-78).

(*Id.* at 1370).  Dr. Rajan instructed the plaintiff to maintain a calendar of her headaches.  (*Id.* at 1372).

The plaintiff next saw Dr. Rajan on October 25, 2018.  (*Id.* at 1367).  She reported having 11 migraines per month with each lasting all day.  (*Id.* at 1367).  These migraines again rated an 8/10 on the pain scale.  (*Id.*).  Dr. Rajan noted that the plaintiff was "doing poorly with prophylactic treatment."  (*Id.* at 1368).

On February 19, 2019, the plaintiff reported experiencing 12 migraines per month with each lasting all day.  (*Id.* at 1364).  These were a 10/10 on the pain scale.  (*Id.*).  Dr. Rajan noted that the plaintiff needed "additional prophylactic treatment."  (*Id.* at 1365).

The plaintiff did not see Dr. Rajan again until March 9, 2020.  (*Id.* at 1361-63).  At that visit, the plaintiff reported having 30 migraines per month.  (*Id.* at 1362).  These migraines lasted all day and were worse at night.  (*Id.*).  They rated a 7/10 on the pain scale.  (*Id.*).  Dr. Rajan directed the plaintiff to restart prophylactic treatment.  (*Id.* at 1363).

On May 7, 2020, the plaintiff again reported experiencing 30 migraines per month with each lasting "hours."  (*Id.* at 1360).  These were a 10/10 on the pain scale.  (*Id.*).  Dr. Rajan noted that the plaintiff was "doing poorly with prophylactic treatment."  (*Id.* at 1361).

On June 5, 2020, the plaintiff reported experiencing 12 migraines per month with each lasting all day. (*Id.* at 1358-59). These migraines were an 8/10 on the pain scale. (*Id.* at 1359). Dr. Rajan noted that the plaintiff was "improving with prophylactic treatment." (*Id.*).

On September 3, 2020, the plaintiff again reported experiencing 12 migraines per month, each of which lasted all day at an intensity of 8/10. (*Id.* at 1357). Dr. Rajan noted that the plaintiff was "not doing [well] with prophylactic treatment." (*Id.* at 1358).

On October 16, 2020, the plaintiff reported that she was experiencing 6 migraines per month with each lasting less than one hour. (*Id.* at 1355). These migraines were a 7/10 on the pain scale. (*Id.*). Dr. Rajan noted that the plaintiff was "doing well with prophylactic treatment." (*Id.* at 1356).

The plaintiff did not see Dr. Rajan again until April 6, 2021. (*Id.* at 1352). On that date, the plaintiff reported experiencing eight to nine migraines per month with each lasting an hour to an hour and a half. (*Id.*). These migraines were an 8-10/10 on the pain scale. (*Id.*). Dr. Rajan noted that the plaintiff was "doing better with prophylactic treatment." (*Id.* at 1353).

On May 6, 2021, the plaintiff reported experiencing seven to eight migraines per month with each lasting a few hours. (*Id.* at 1351). These migraines rated a 10/10 on the pain scale. (*Id.*).

Dr. Rajan noted that the plaintiff was "improving with prophylactic treatment." (*Id.* at 1352).

On June 2, 2021, the plaintiff reported having seven migraines per month with each lasting 30 to 60 minutes. (*Id.* at 1349-50). These migraines were an 8/10 on the pain scale. (*Id.* at 1349). Dr. Rajan noted that the plaintiff was "doing better with prophylactic treatment" and that she "report[ed] good efficacy" with her treatment. (*Id.* at 1350).

On August 4, 2021, the plaintiff reported experiencing three to four migraines per month with each lasting 30 to 60 minutes. (*Id.* at 1396). These migraines were a 10/10 on the pain scale. (*Id.*). Dr. Rajan noted that the plaintiff was "doing well with prophylactic treatment." (*Id.* at 1397).

## C. Assessments

The record contains five medical assessments of the plaintiff's impairments. One is an assessment from Dr. Rajan based on his treatment of the plaintiff, while the others are from state agency physicians and psychologists who reviewed the plaintiff's medical records but did not examine her. Each assessment is summarized below.

### 1. *Dr. Rajan*

Dr. Rajan rendered his opinion on April 21, 2020. (*Id.* at 838). In a one-sentence opinion responding to a prompt, Dr. Rajan stated that the plaintiff "is able to do all above activities."

(*Id.*).  The "above activities" listed in the prompt were "work-related physical activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking and traveling; or, if the impairment is mental, mental activities such as understanding and memory, sustained concentration and persistence, social interaction, and adaptation." (*Id.*).  Dr. Rajan also described the plaintiff's prognosis as "[g]ood." (*Id.* at 839).

> 2.   *John Jao, M.D.*

On April 20, 2020, after reviewing the plaintiff's medical records, Dr. Jao opined that she could work with exertional and postural limitations.  (*Id.* at 265-66).  Specifically, he opined that the plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and occasionally balance, stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, or scaffolds.  (*Id.*).  Dr. Jao found that the plaintiff had no manipulative, visual, communicative, or environmental limitations. (*Id.* at 266).

> 3.   *S. Fischer, Psy.D.*

On April 22, 2020, Dr. Fischer opined that the plaintiff had limitations in sustained concentration and persistence and adaptation but not in understanding and memory or social

interaction.  (*Id.* at 266-67).  Dr. Fischer found that the plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to changes in work setting. (*Id.* at 267).  Based on these limitations, Dr. Fischer opined that the plaintiff "can carry out simple instructions in a normal workday/workweek" and "can adapt to routine stressors."  (*Id.*).

### 4.  *Lucinda Wheelock, M.D.*

Dr. Wheelock reviewed the plaintiff's medical records in connection with her request for reconsideration after the initial denial of her application, rendering her opinion on July 1, 2020. (*Id.* at 272, 282-85).  Dr. Wheelock's findings were identical to Dr. Jao's assessment.  (*Id.* at 282-84).

### 5.  *Brian O'Sullivan, Ph.D.*

Like Dr. Wheelock, Dr. O'Sullivan reviewed the plaintiff's medical records as part of the reconsideration process, rendering his opinion on July 13, 2020.  (*Id.* at 272, 285-88).  Dr. O'Sullivan concurred with the limitations Dr. Fischer found while additionally finding that the plaintiff was moderately limited in her ability to interact appropriately with the general public. (*Id.* at 285-88).  Regarding her limitations in sustained

concentration and persistence, Dr. O'Sullivan noted the following: "[The plaintiff] can carry out simple instructions in a normal workday/workweek.   Due to mood and pain interactions[,] concentration & pace may vary and there could be occasional difficulties with early morning punctuality." (*Id.* at 286).   As for limitations in social interaction, Dr. O'Sullivan found that the plaintiff "can be socially effective in short superficial interactions[,] but due to mood might not do well in tasks requiring regular engagement with [the] general public." (*Id.* at 287).   Finally, regarding the plaintiff's adaptation capacities, Dr. O'Sullivan opined that she "can adapt to routine stressors and manage basic challenges of independent living within any physical limits [she] may have." (*Id.* at 288).

### D.  Hearing Testimony

The ALJ convened a hearing on November 23, 2021, at which the plaintiff and a vocational expert testified.  (*Id.* at 194-195). Relating to her migraines, the plaintiff testified that she experienced headaches "[a]lmost every day" and that her headache medication "barely work[ed]." (*Id.* at 217).   She also testified that her headaches lasted "all day" and that they interfered with her memory.  (*Id.* at 217-18).

As for the vocational expert, the ALJ asked her the following question:

> Assume a person of claimant's . . . age, education, work experience.  Able to perform at the light level as defined by the regulation.  Ramps and stairs, occasional.  Ladders, ropes, and scaffolds is never.  Stoop, crouch, kneel, crawl, occasional. . . . Avoid concentrated exposure to extreme cold. . . . Avoid concentrated exposure to fumes, odors, dust, gases, poorly ventilated areas and concentrated exposure to hazards such as the operation or control of moving machinery and unprotected heights.  Work is limited to simple, routine, repetitive tasks.  Work with only occasional changes in the work setting.  The only interaction with the public should be superficial, interpersonal interactions[,] and when I use the word occasional, I mean up to one third of an eight-hour workday.  Are there any jobs in the economy such a hypothetical person could perform?

(*Id.* at 221-22).  The vocational expert provided three jobs meeting these conditions: merchandise marker, mail clerk, and routing clerk.  (*Id.* at 222).  The vocational expert further testified that the plaintiff's hypothetical employment would likely be terminated if she were to miss work more than twice a month, if she were off task 20 percent of the time, or if she would have to take unscheduled breaks totalling two hours per day.  (*Id.* at 222-23).

### E.   The ALJ's Decision

On December 14, 2021, the ALJ denied the plaintiff's SSI claim in a written decision.  At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since March 10, 2020, which was both the application date and the amended disability onset date.  (*Id.* at 13).

At step two, the ALJ found that the plaintiff "ha[d] the following severe impairments: lumbar spine degenerative disc disease and depressive and anxiety disorders." (*Id.*). He found that the plaintiff's several other medically determinable impairments, including her migraines, were not severe. (*Id.*).

Commenting on the plaintiff's migraines specifically, the ALJ noted that her "medical records. . .show[ed] a history of migraines," that as of March 2020 she "reported daily headaches and was prescribed medications," but subsequently reported doing well on medications in October 2020, and reported continued improvement in May, June, and August 2021. The ALJ found the plaintiff's migraine-related impairments to be non-severe. (*Id.* at 15).

At step three, the ALJ found that the plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*).

At step four, the ALJ began by finding that the plaintiff had the RFC to perform "light work" subject to the limitations he provided to the vocational expert at the hearing. (*Id.* at 17). The ALJ went on to find that the plaintiff had no past relevant work. (*Id.* at 20).

At step five, the ALJ found that "there [were] jobs that exist in significant numbers in the national economy that the [plaintiff could] perform." (*Id.* at 21). In so finding, the ALJ cited the

vocational expert's testimony that the plaintiff could work as a merchandise marker (a position for which 130,000 jobs exist nationally, according to the testimony of the vocational expert), a mail clerk (12,000 jobs), or a routing clerk (106,000 jobs). (*Id.*).  Because the plaintiff could perform those jobs, the ALJ found that she was not disabled.  (*Id.* at 21-22).

## V.   <u>DISCUSSION</u>

### A.   Standard of Review

Pursuant to the Social Security Act, the court may affirm, modify, or reverse the final decision of the Commissioner, "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The court must affirm the ALJ's decision if it employs the correct legal standard and is supported by substantial evidence.  *Sacilowski*, 959 F.3d at 437; *see Rodriguez Pagan v. Sec'y of Health and Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) ("We must affirm the [agency's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Dunn v. Colvin*, Civil Action No. 15-13390-PBS, 2016 WL 4435079, at *7 (D. Mass. Aug. 19, 2016) (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988)).  Although "the threshold for such evidentiary sufficiency is not high, . . . [it] is 'more than a mere scintilla.'"  *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Concordantly, "[t]he ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.   The ALJ's Consideration of the Plaintiff's Migraines**

The plaintiff contends that the ALJ failed to consider her testimony regarding her migraines when determining her RFC.  SSR 16-3p requires that an ALJ consider a claimant's evidence and testimony regarding pain and its effect on their RFC, and prescribes a two-step process the ALJ must follow.  First, the ALJ must determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms.  Second, he must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently. Soc. Sec. Ruling 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p ("SSR 16-3p") (S.S.A. Mar. 16, 2016).

If the ALJ "decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding." *Burge v. Colvin*, C.A. No. 15-279S, 2016 WL 8138980, at *6 (D.R.I. Dec. 7, 2016); *see Da Rosa v. Sec'y of Health and Hum. Servs.*, 803 F.2d

24, 26 (1st Cir. 1986) ("On remand, the ALJ is still free to find that appellant's testimony regarding his pain and exertional limitations is not credible.  This result, however, must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant.") (internal citation omitted).  This is so notwithstanding the usual rule that an ALJ "is not required to . . . discuss every piece of evidence in the record." *Ramos v. Kijakazi*, 596 F. Supp. 3d 246, 253 (D. Mass. 2022).  "The lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case." *Burge*, 2016 WL 8138980, at *6.

Here, the ALJ explicitly discussed the plaintiff's migraines at step two in considering whether she had any severe impairments, but he did not explicitly mention her history of migraines or, as more pertinent here, her testimony regarding her migraines, when assessing her RFC.  The plaintiff appears to presume, reasonably, that the ALJ's comments at step two regarding the consideration of her migraines carried over to his considerations at step four; that is, she presumes, as does the court, that the ALJ at step four did effectively consider the migraine-related evidence in the record leading up to the administrative hearing.[6]  The plaintiff

_____

[6] By discussing the plaintiff's migraines in some depth at step two, the ALJ is presumed to have considered that impairment to the same extent in determining the claimant's RFC.  *See Furey v. Saul*, 501 F. Supp. 3d 29, 51-52 (D. Mass.

contends, though, that the ALJ appears to have "ignored" her hearing testimony regarding the "length and frequency of her migraine headaches" among other "limitations that prevented her from returning to work," and thus also failed to consider how her headaches "impacted the RFC when considered in combination with [her] severe impairments."

The court agrees that the ALJ's discussion of the impact of the plaintiff's migraines is silent as to the plaintiff's testimony. In his discussion, the ALJ cites exclusively to Dr. Rajan's progress notes, which suggest that the migraines have been decreasing in frequency and are well controlled with "routine medications." (A.R. 15). But nowhere in the discussion does the ALJ mention the plaintiff's contrary hearing testimony that she experienced migraines all day, every day, and that her medications were ineffective to treat them.

To be sure, this does not necessarily mean, contrary to the plaintiff's argument, that the ALJ failed to consider and assess her testimony. Indeed, circumstantial evidence suggests that the

---

2020); *see also Mitchell v. Kijakazi*, Civil Action No. 21-40085-TSH, 2022 WL 17658117, at *7 (D. Mass. Aug. 19, 2022) (quoting *Furey*, 501 F. Supp. 3d at 52) ("The Court reads the ALJ's decision as a whole, keeping in mind that 'it would be needless formality to have the ALJ repeat substantially similar factual analyses' at multiple points of his decision."). This inference is particularly appropriate where, as here, the ALJ acknowledges that he was required to consider all the plaintiff's severe and non-severe impairments in determining her RFC. *See Allison M. v. Kijakazi*, Civil Action No. 22-10033-FDS, 2023 WL 5650100, at *11 (D. Mass. Aug. 31, 2023); *Furey*, 501 F. Supp. 3d at 51.

ALJ did consider it.  Early in his written decision, the ALJ indicated that he made his findings "[a]fter careful consideration of all the evidence."  (*Id.* at 12).  More significantly, the ALJ noted at the outset of his step two analysis that the plaintiff "testified to . . . daily headaches."  (*Id.* at 13).  At step four, he relied in part on other portions of the plaintiff's testimony, such as her reports of not using assistive devices and being able to prepare simple meals.  (*Id.* at 18-19).

Considering these various pieces together, it would not be unreasonable to infer that the ALJ considered the plaintiff's testimony regarding her migraines but ultimately decided not to credit it in light of other evidence in the record.  However plausible this reading may be, though, the record falls short of being "obvious as to the credibility finding."  *See Burge*, 2016 WL 8138980, at *6.  Even if the ALJ considered and discredited the plaintiff's testimony, he did not "make specific findings as to the relevant evidence he considered in determining to disbelieve the [testimony]" as he was required to do.  *See Da Rosa*, 803 F.2d at 26.  Consequently, the record is not clear whether the ALJ impermissibly ignored evidence -- namely, the plaintiff's testimony -- in making his findings of fact.  *See Nguyen*, 172 F.3d at 35 ("The ALJ's findings of fact . . . are not conclusive when derived by ignoring evidence[.]").

Because the court cannot be certain that the ALJ adequately considered the plaintiff's testimony, and thus that his findings are supported by substantial evidence in the record, it is necessary to remand the matter for clarification.  On remand, the ALJ must indicate (1) whether he considered the plaintiff's testimony about her migraines; (2) to what extent he credited that testimony; and (3) if he discredited or discounted the testimony, what evidence he relied on in doing so.  If he did not consider the plaintiff's testimony about her migraines in making his initial findings, the ALJ must render new findings of fact that incorporate said testimony.

The court stresses that it takes no position on what the ALJ should find or conclude on remand.  As intimated above, but for the uncertainty over the treatment of the plaintiff's testimony, the ALJ's determination appeared to be grounded in the record.  Should the ALJ indicate that he did consider the plaintiff's testimony but declined to credit it, and explain why, the ultimate determination in this case would most likely remain unchanged.[7]

---

[7] Dr. Rajan's progress notes indicate that the plaintiff's migraines have decreased in frequency to three or four per month and in duration to 30 to 60 minutes each.  (A.R. 1396).  These progress notes reflect the plaintiff's own reports to Dr. Rajan about the frequency, duration, and severity of her headaches at various points, which are exactly the "clinically-reported symptoms" that are probative of the existence of migraines.  *Dunn*, 2016 WL 4435079, at *11.  It would be within the ALJ's discretion to credit the progress notes notwithstanding the plaintiff's testimony.  Based on the accounts reflected in the progress notes, the plaintiff's treating physician opined that she could work without any limitations.  (A.R. 838); see Yearling v. Colvin, 292 F. Supp. 3d 515, 520 (D. Mass. 2017) ("If the RFC includes greater

However, should the ALJ credit the plaintiff's testimony, it might then be necessary to conduct further proceedings to pose revised hypotheticals to the vocational expert, which in turn might yield a different outcome at steps four and five.  Whatever the ALJ decides, what matters is that the record reflect the specific findings supporting his determination.  At present, the court is unable given the ambiguity in the current record to conclude that the ALJ's finding is supported by substantial evidence.

**VI.   <u>CONCLUSION</u>**

For the foregoing reasons, the matter is remanded to the Commissioner for further proceedings consistent with this opinion. The plaintiff's motion for an order reversing the decision of the commissioner is ALLOWED in part and DENIED in part.[8]  The defendant's motion for an order affirming the decision of the Commissioner is DENIED.

<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.


DATED: December 4, 2023

---

limitations than those in a physician's assessment, such limitations cannot be used to discount the ALJ's determination.").

[8] The plaintiff's motion is denied insofar as it seeks a *de novo* hearing.